STATE OF NORTH CAROLINA v. JAMES BERNARD HENDERSON, Defendant

No. COA08-1409

(Filed 8 December 2009)

**1. Sentencing— prior record level—failure to show substantial similarity of out-of-state convictions**

The trial court erred in a rape, burglary, kidnapping, and sexual offense case by sentencing defendant as a level IV offender and the case was remanded for resentencing. The State failed to demonstrate to the trial court the substantial similarity

between defendant's out-of-state convictions and North Carolina crimes and the Court of Appeals lacked the information necessary to conduct its own substantial similarity analysis for harmless error purposes.

**2. Appeal and Error— preservation of issues—statute inapplicable at time offenses committed**

Defendant's arguments regarding his probation or parole violation based upon N.C.G.S. §§ 15A-1022.1(c), -1340.16(a5), and (a6) were dismissed as none of these statutory subsections were in effect at the time defendant committed his offenses, and defendant failed to make any argument that the trial court erred under the proper statutes applicable to his offenses.

Appeal by defendant from judgments entered on or about 8 February 2008 by Judge Henry W. Hight, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 6 May 2009.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Catherine F. Jordan, for the State.*

*Russell J. Hollers, III, for defendant-appellant.*

STROUD, Judge.

Defendant was convicted by a jury of rape, burglary, kidnapping, and sexual offense. Defendant appeals, arguing that the trial court erred in sentencing him as a level IV offender. For the following reasons, we remand for resentencing.

## I. Background

The State's evidence tended to show that in September of 1999, Lisa returned home from a weekend away and noticed that "[her] lamp wouldn't turn on, and [her] apartment was wet, and [her] bed was kind of shifted[.]" Lisa discovered that her lamp was unplugged. Lisa put her sheets into the washing machine. Lisa then lay on her couch and watched TV. Lisa fell asleep and later awoke upon hearing movement of the blinds on her sliding glass door. Lisa saw "a man coming in [her] apartment with a gun."

Defendant grabbed Lisa, "held a gun to [her] head[,]" and asked her for money. Defendant told Lisa "that the reason why he's doing this is because [her] forefathers raped and killed his people and forced them into slavery[.]" Lisa gave defendant her purse and

informed him she did not have any money. Defendant pushed Lisa down and took off her clothes. Defendant put his finger in Lisa's vagina. Defendant then raped Lisa. Defendant requested more money and Lisa gave him her credit cards. Before leaving, defendant told Lisa "that if he saw anything in the news or if the police arrived, that he knew where [her] family lived and that he would kill them." After defendant left, Lisa called her parents and the police. Lisa was taken to the hospital, where she was interviewed by a detective and examined by a nurse, who took vaginal swabs. The DNA on Lisa's vaginal swab matched defendant's DNA.

On or about 14 May 2007, defendant was indicted for first degree rape, first degree burglary, first degree kidnapping, and first degree forcible sexual offense. Defendant was found guilty by a jury on all four charges. The trial court determined that defendant had a prior record level of IV and sentenced him to consecutive sentences of 384 to 469 months on the rape conviction, 117 to 150 months on the burglary conviction, 46 to 65 months on the kidnapping conviction, and 384 to 469 months on the forcible sexual offense conviction. Defendant appeals, arguing that the trial court erred in sentencing him as a level IV offender. For the following reasons, we remand for resentencing.

## II. Record Level

**[1]** Defendant argues that the trial court erred in sentencing him as a record level IV offender because (1) "the State did not prove that [defendant]'s out-of-state convictions were for offenses substantially similar to any North Carolina offenses" and (2) "there was insufficient evidence that [defendant] was on probation or parole at the time of the offense." (Original in all caps.)

A. Substantially Similar Offenses

During sentencing the following dialogue took place:

THE COURT: . . . The state prepared to proceed to sentencing?

MR. CRUDEN [State's attorney]: We are, judge. I have a work-sheet which I relayed to the Court earlier, and that you've heard in the testimony, the defendant had prior convictions in Pennsylvania in 1989.

The most serious conviction would be the two counts of armed robbery, Class D felony.

He had the unauthorized use of a motor vehicle in '88 in Pennsylvania, and the domestic violence conviction in South Carolina 2002.

And then based on his testimony yesterday when he testified he was on probation or post-release supervision when these offenses occurred, there is an additional point for that, so we would contend he has nine points, he's a record Level IV for sentencing. I gave the defendant notice of that after the testimony yesterday.

THE COURT: Does the defendant stipulate that he would have nine prior record level points, therefore for sentencing purposes he would be a record Level IV?

MR. PRESNELL [defendant's attorney]: Yes, sir.

Based upon the sentencing worksheet and defendant's stipulation, the trial court assigned defendant six points for a prior conviction for a Class D felony based upon a 2 March 1989 Pennsylvania conviction for robbery and one point each for two prior convictions of a Class A1 or Class 1 misdemeanor based upon a 23 September 2002 South Carolina conviction for domestic violence and a 14 December 1988 Pennsylvania conviction for unauthorized use of a motor vehicle, for a total of eight points based upon prior convictions. The trial court also assigned one point based upon a finding that "the offense was committed . . . while on supervised or unsupervised probation, parole, or post-release supervision[.]"

Defendant contends that his concession to nine prior record level points and a record level of IV "did not relieve the state of its burden of proving that the out-of-state offenses were substantially similar to any North Carolina crimes."

Defendant claims that

[i]n the present case, the state did not present the trial court with any evidence that the out-of-state offenses were substantially similar to any North Carolina offenses, misdemeanor or felony. The state did not provide the trial court with the South Carolina or Pennsylvania statutes. The state did not present the trial court with any North Carolina statutes that it contended resembled the out-of-state offenses. The state did not even name any North Carolina offense when arguing that "Domestic Violence" was similar to a North Carolina Class 1 or

A1 misdemeanor. The only evidence the state offered regarding the Pennsylvania offenses was their titles, "Unath Use MV" and "Robbery".

N.C. Gen. Stat. § 15A-1340.14(e) provides,

> Except as otherwise provided in this subsection, a conviction occurring in a jurisdiction other than North Carolina is classified as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony, or is classified as a Class 3 misdemeanor if the jurisdiction in which the offense occurred classifies the offense as a misdemeanor. If the offender proves by the preponderance of the evidence that an offense classified as a felony in the other jurisdiction is substantially similar to an offense that is a misdemeanor in North Carolina, the conviction is treated as that class of misdemeanor for assigning prior record level points. If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points. If the State proves by the preponderance of the evidence that an offense classified as a misdemeanor in the other jurisdiction is substantially similar to an offense classified as a Class A1 or Class 1 misdemeanor in North Carolina, the conviction is treated as a Class A1 or Class 1 misdemeanor for assigning prior record level points.

N.C. Gen. Stat. § 15A-1340.14(e) (1999).

This Court has determined that calculating an offender's prior record level, when an offender has out-of-state offenses, is a mixed question of fact and law, which requires comparison of the relevant statutes describing the North Carolina crimes with those of the state where defendant was convicted. *See State v. Hanton*, 175 N.C. App. 250, 254-55, 623 S.E.2d 600, 604 (2006).

> [W]hether an out-of-state offense is substantially similar to a North Carolina offense is a question of law that must be determined by the trial court, not the jury. Determining a defendant's prior record [level] involves a complicated calculation of rules and statutory applications. This calculation is a mixed question of law and fact. The fact is the fact of the conviction, which under *Blakely* is not a question for a jury. The law is the proper appli-

cation of the law to the fact of a defendant's criminal record, which often involves, as the present case does, comparing the elements of a defendant's prior convictions under the statutes of foreign jurisdictions with the elements of crimes under North Carolina statutes. The comparison of the elements of an out-of-state criminal offense to those of a North Carolina criminal offense does not require the resolution of disputed facts. Rather, it involves statutory interpretation, which is a question of law.

*Id.* (citations, quotation marks, and brackets omitted).

This Court has also explained that a defendant's stipulation to an out-of-state felony conviction is sufficient to support treating the felony conviction as a Class I felony, but the stipulation alone is not sufficient to support a higher classification for sentencing purposes. *See State v. Bohler,* —— N.C. App. ——, ——, ——, S.E.2d ——, —— (Aug. 4, 2009 COA08-1515)

In *State v. Hinton,* —— N.C. App. ——, 675 S.E.2d 672, 675 (2009), this Court expressly differentiated between the validity of a stipulation to the existence of any of the convictions listed on the prior record level worksheet and the assignment of points to his prior convictions in New York. In light of this conclusion, we specifically stated that:

According to the statute, the default classification for out-of-state felony convictions is Class I. Where the State seeks to assign an out-of-state conviction a more serious classification than the default Class I status, it is required to prove by the preponderance of the evidence that the conviction at issue is substantially similar to a corresponding North Carolina felony. However, where the State classifies an out-of-state conviction as a Class I felony, no such demonstration is required. Unless the State proves by a preponderance of the evidence that the out-of-state felony convictions are substantially similar to North Carolina offenses that are classified as Class I felonies or higher, the trial court must classify the out-of-state convictions as Class I felonies for sentencing purposes.

Thus, while the trial court may not accept a stipulation to the effect that a particular out-of-state conviction is substantially similar to a particular North Carolina felony or misdemeanor, it may accept a stipulation that the defendant in question has been convicted of a particular out-of-state offense and that

this offense is either a felony or a misdemeanor under the law of that jurisdiction.

*Id.* (citations, quotation marks, and brackets omitted).

Thus, though defendant could and did stipulate to the existence of his out-of-state convictions, and he could stipulate that they were felonies or misdemeanors, *id.*, he *could not* stipulate to a question of law, i.e., whether "the State prove[d] by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina . . . ." N.C. Gen. Stat. § 15A-1340.14(e); *Bohler* at ——, —— S.E.2d at ——; *see also State v. Prevette*, 39 N.C. App. 470, 472, 250 S.E.2d 682, 683 (citations omitted), *disc. review denied and appeal dismissed*, 297 N.C. 179, 254 S.E.2d 38 (1979) ("The State and defendants attempted to stipulate as to a question of law. Stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate. This rule is more important in criminal cases, where the interests of the public are involved. The due administration of the criminal law cannot be left to the stipulations of the parties." (citations omitted)).

The State argues that defendant is not entitled to a new sentencing hearing because any error in the calculation of his prior record level was harmless. However, we cannot say that there is not a reasonable possibility that, but for the trial court's error, defendant would not have been sentenced at a lower prior record level. For example, defendant's Pennsylvania robbery conviction was treated as a Class D felony, for which six record points were assigned, instead of a Class I felony conviction, for which two record points would have been assigned. *See* N.C. Gen. Stat. § 15A-1340.14(e). Defendant's South Carolina domestic violence conviction and Pennsylvania unauthorized use of a motor vehicle conviction were treated as Class A1 or 1 misdemeanors, with one point each, instead of Class 3 misdemeanors, for which no points would have been assigned. *See id.* If the trial court had assigned points based on the "default" levels of two points for the robbery conviction and no points for the other convictions, due to the absence of an adequate substantial similarity showing, defendant would have had only two points based upon prior convictions, and he would have been a prior record level II, instead of IV, for sentencing purposes. *See id.*

The State also argues on appeal that any trial court error was harmless and that defendant's out-of-state convictions are substan-

tially similar to specific North Carolina offenses. In advancing this argument, the State identifies in its brief the statutes under which it contends that defendant was convicted in South Carolina and Pennsylvania and argues that these statutes establish the necessary substantial similarity. The State did not identify these South Carolina and Pennsylvania statutes during sentencing before the trial court or in the record on appeal. The State may be correct in its contentions regarding each of these offenses, but it is not the proper role of this Court to engage in that determination in this case as neither we nor the trial court were presented with the necessary facts to make such a determination. *See, e.g., State v. Palmateer*, 179 N.C. App. 579, 581, 634 S.E.2d 592, 593 (2006) (remanding to the trial court for resentencing) (citation omitted)). The out-of-state crimes were not identified by statutes in the record, but instead only by brief and nonspecific descriptions, especially "robbery" and "domestic violence," which could arguably describe more than one specific South Carolina and Pennsylvania crime. Although we recognize that it may be possible for a record to contain sufficient information regarding an out-of-state conviction for this Court to determine if it is substantially similar to a North Carolina offense, the record before us does not. Accordingly, we will not speculate as to whether the State has for the first time, in its brief on appeal, properly identified the out-of-state statutes for comparison.

Therefore, since the State failed to demonstrate to the trial court the substantial similarity of defendant's out-of-state convictions to North Carolina crimes which would carry the sentencing points as assigned by the trial court and because we lack the information necessary to conduct our own substantial similarity analysis for harmless error purposes, we must remand for resentencing. *See Palmateer* at 581, 634 S.E.2d at 593. At the resentencing hearing, the trial court may consider additional information presented by the State or by defendant regarding defendant's prior offenses.

B. Probation or Parole

[2] Defendant also argues that the trial court improperly assigned him an additional point for being on probation or parole at the time of the offenses. Defendant contends that "the state did not provide [him] with the proper notice that it intended to have the trial court add a point to his record for being on parole in September 1999" pursuant to N.C. Gen. Stat. § 15A-1340.16(a6). Defendant further argues pursuant to N.C. Gen. Stat. § 15A-1340.16(a5) that "the trial court erred by failing to impanel a jury to determine whether [de-

fendant] was on probation in September 1999." Lastly, defendant argues that "the trial court erred by failing to conduct a formal plea colloquy regarding the probation point" in violation of N.C. Gen. Stat. § 15A-1022.1(c).

All of defendant's arguments regarding his probation or parole violation are based upon N.C. Gen. Stat. §§ 15A-1022.1(c), -1340.16(a5), and (a6). However, none of these statutory subsections were in effect at the time defendant committed his offenses. North Carolina Session Law 2005-145, which refers to N.C. Gen. Stat. §§ 15A-1022.1, -1340.16(a5), and (a6), provides,

> This ,act is effective when it becomes law. *Prosecutions for offenses committed before the effective date of this act are not abated or affected by this act,* and the statutes that would be applicable but for this act remain applicable to those prosecutions.
>
> . . . .
>
> Became law upon approval of the Govenor at 2:50 p.m. on the 30th day of June, 2005.

2005 N.C. Sess. Laws ch. 145, § 5 (emphasis added).

As defendant's offenses were committed in 1999, he cannot raise arguments on appeal based upon N.C. Gen. Stat. §§ 15A-1022.1(c), -1340.16(a5), and (a6). *See id., see also State v. Everette,* 361 N.C. 646, 656, 652 S.E.2d 241, 247-48 (2007) ("The remedial measures our legislature enacted in the wake of *Blakely* remain in full force when applicable, but we summarily reject defendant's suggestion that we should retroactively engraft these statutory protections onto the federal *Blakely* right under the guise of constitutional interpretation. Accordingly, for those cases arising prior to the effective date of the *Blakely Act* [, N.C. Gen. Stat. § 15A-1022.1], we reaffirm our prior cases and follow the federal courts in holding that defense counsel's admissions to the existence of an aggravating factor constitute *Blakely*-compliant admissions upon which an aggravated sentence may be imposed."). As defendant has failed to make any argument that the trial court erred under the proper statute as applicable to his 1999 offenses, this assignment of error is overruled.

### III. Conclusion

We conclude that the trial court erred by assigning nine prior record level points to defendant based upon his out-of-state convic-

tions, as the State failed to present evidence regarding a substantial similarity between defendant's out-of-state convictions and North Carolina offenses. Accordingly, we remand for resentencing as to defendant's out-of-state offenses.

REMANDED.

Judges ELMORE and ERVIN concur.